THE LUFF COMPANY (FORMERLY: TEMPLATE REPRODUCTION & ENGINEERING COMPANY), ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4771–63, 3250–64—3254–64. Filed July 6, 1965.

---

[1] *Proceedings of the following petitioners are consolidated herewith:* Samuel B. Fortenbaugh, Jr., Executor of the Estate of Ralph G. Luff, Deceased, Transferee, docket No. 3250–64; Samuel B. Fortenbaugh, Jr., Transferee, docket No. 3251–64; Ralph G. Luff, Jr., Transferee, docket No. 3252–64; John H. Luff, Transferee, docket No. 3253–64; and William G. Luff, Transferee, docket No. 3254–64.

*Peter O. Clauss*, for the petitioners.
*Albert Squire*, for the respondent.

534

536

# 538

Raum, *Judge:* The sole issue before us is whether the Luff Co. is entitled, under section 337 of the 1954 Code,[4] to nonrecognition of the $19,427 profit realized by it in respect of the work-in-process items which the new corporation completed. Section 337(a) provides in substance that where a corporation distributes all of its assets within a 12-month period beginning with the adoption of a plan of complete liquidation, no gain or loss shall be recognized in respect of any sales of property by it during that 12-month period. There is no dispute that the various requirements of section 337(a) have been met here. However, section 337(b)(1)(A) makes subsection (a) inapplicable in the case of stock in trade or property which would properly be included in closing annual inventory, as well as property held primarily for sale to customers in the ordinary course of business. And here, too, there is no dispute between the parties that the work-in-process items are covered by the terms of subsection (b)(1)(A). But the pivotal provisions in this case are contained in subsection (b)(2), which in turn spells out an exception to (b)(1), and provides in substance that notwithstanding (b)(1), if substantially all of the property described in (b)(1)(A) is "sold * * * to one person in one transaction," then the term "property" in subsection (a) includes the property so sold. The crucial question that is thus presented to us for decision is whether the work-in-process items were "sold" by the Luff Co. to the new corporation pursuant to the agreement of July 2, 1960, thus satisfying (b)(2), and rendering the (b)(1)(A) exception inapplicable, with the consequence that the nonrecognition provision of (a) would be brought into play.[5]

---

[4] SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.

  (a) GENERAL RULE.—If—
    (1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and
    (2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,
then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

  (b) PROPERTY DEFINED.—
    (1) IN GENERAL.—For purposes of subsection (a), the term "property" does not include—
      (A) stock in trade of the corporation, or other property of a kind which would properly be included in the inventory of the corporation if on hand at the close of the taxable year, and property held by the corporation primarily for sale to customers in the ordinary course of its trade or business,

    *      *      *      *      *      *      *

    (2) NONRECOGNITION WITH RESPECT TO INVENTORY IN CERTAIN CASES.—Notwithstanding paragraph (1) of this subsection, if substantially all of the property described in subparagraph (A) of such paragraph (1) which is attributable to a trade or business of the corporation is, in accordance with this section, sold or exchanged to one person in one transaction, then for purposes of subsection (a) the term "property" includes—
      (A) such property so sold or exchanged, and

[5] Assuming that the work-in-process items were "sold" to the new corporation, there is no dispute between the parties that "substantially all" of the pertinent (b)(1)(A)

The agreement of sale, made pursuant to a plan of liquidation, involved in the present case clearly provided that all of the machinery and equipment, furniture and fixtures, name and goodwill of petitioner were being sold to the new corporation. It provided with equal clarity that the inventory of raw materials was not being sold. However, the treatment in the agreement of petitioner's work-in-process inventory was ambiguous. The matter is not free from doubt, but after a careful consideration of all of the evidence presented, we have concluded that the scales tip in petitioner's favor and we find that petitioner's entire work-in-process inventory was sold to the new corporation on July 2, 1960, with the consequence that the gain from that sale comes within the nonrecognition provisions of section 337.

Paragraph V(a) of the agreement states that "SELLER is not selling and BUYER IS NOT PURCHASING or assuming any liabilities, debts or obligations of SELLER except as set forth in paragraph X(d) hereof." The exception to this statement of things which were not being sold contained in paragraph X(d) provides for the completion of the work-in-process items and the division of the proceeds therefrom between the buyer and the seller. Although these provisions are crudely drafted in this respect, we think that the most logical explanation for this exception is that the work-in-process was sold.

Although the work-in-process items were to be treated separately, they were sold on July 2, 1960, along with most of petitioner's other assets. The need for different treatment of the sale of the work-in-process items from the sale of petitioner's other assets was due not only to the new corporation's lack of funds, but also to difficulty in valuation of such items and the possibility that any particular item might not be accepted by the ultimate purchaser. The formula adopted in the contract provided a simple and equitable means for the new corporation to finance its purchase of the work-in-process items.

In addition, it is emphasized in paragraphs V(a) and X(b) that the raw material inventory was *not* being sold at that time. If the work-in-process also was not being sold it would have been simple enough to so state. However, there is no such provision regarding the work-in-process.

The Government contends that only the assets classified under paragraph IV, which does not include work-in-process, were sold under the terms of the agreement. However, the agreement is divisible into two parts. First, there was the sale of petitioner's "physical assets," name, goodwill, and office supplies and equipment, under the terms

property was sold in one transaction. Conceivably, the argument might have been made that the manufacturing inventory was also pertinent (b)(1)(A) property and the failure to sell the manufacturing inventory in the same transaction made these provisions inapplicable, but no such argument has been made here, and we do not pass upon it.

of paragraph IV, with payment therefor provided in paragraph VI. And second, there was a sale of the work-in-process under paragraph V(a), although crudely and inartistically drafted, with payment therefor provided in paragraph X(d). The reasons for this division have been previously stated.

The Government accepts this division of the agreement, but argues that in regard to the work-in-process the agreement was not a sale but was in the nature of a joint venture. A joint venture is a combination of persons in a single enterprise in which a profit is sought without an actual partnership or corporate designation. *Ray S. Robinson*, 44 T.C. 20, 34; *Beck Chemical Equipment Corporation*, 27 T.C. 840, 848–849; *Estate of L. O. Koen*, 14 T.C. 1406, 1409. Whether a joint venture was formed is a question of fact to be determined in each case upon the evidence presented. "[W]hile all circumstances are to be considered, the essential question is whether the parties intended to, and did in fact, join together for the present conduct of an undertaking or enterprise." *Hubert M. Luna*, 42 T.C. 1067, 1077. The Court in that case, at pages 1077–1078, pointed out the following factors which are pertinent in answering that question:

The agreement of the parties and their conduct in executing its terms; the contributions, if any, which each party has made to the venture; the parties' control over income and capital and the right of each to make withdrawals; whether each party was a principal and coproprietor, sharing a mutual proprietary interest in the net profits and having an obligation to share losses, or whether one party was the agent or employee of the other, receiving for his services contingent compensation in the form of a percentage of income; whether business was conducted in the joint names of the parties; whether the parties filed Federal partnership returns or otherwise represented to respondent or to persons with whom they dealt that they were joint venturers; whether separate books of account were maintained for the venture; and whether the parties exercised mutual control over and assumed mutual responsibilities for the enterprise.

In the present case both petitioner and the new corporation contributed to the production of 65 of the 75 work-in-process items. *However, they did so individually and consecutively rather than collectively or concurrently.* This is more indicative of a sale than a joint venture.

The Government relies upon the fact that the agreement provided for a division between the parties of the proceeds from sales of the items. While such an arrangement might ordinarily be evidence of the presence of a joint venture we do not find it to be persuasive here. Clearly, it would not evidence a joint venture as to the 10 items on which petitioner had done no work and incurred no costs. An agreement calling for the division of unascertained future proceeds may be a sale of goods, services, or an entire business rather than a joint venture. See *Ayrton Metal Co.* v. *Commissioner*, 299 F. 2d 741, 748–749 (C.A. 2), and cases cited therein. Cf. *Ray S. Robinson*, *supra* at 35.

None of the other above-mentioned factors weigh in favor of the Government's position. In the circumstances of the present case the method of computation provided for in the agreement was the most reasonable and equitable means of establishing the amount to be paid by the new corporation for the work-in-process.

The Government places a great deal of emphasis on the failure of petitioner to notify its customers of the sale of the work-in-process, if such a sale took place. While there was no written notice of an assignment of the contracts which petitioner had with its customers, there is some indication that there may have been oral notification and aquiescence by the 16 customers whose orders made up the work-in-process. And in any event, there was at most a violation of the contractual requirements calling for the consent of the customers which did not, however, preclude the existence of a sale.

As previously indicated, the matter is not free from doubt. Yet we are satisfied on the whole that petitioner intended to and in fact did transfer its entire business, including work-in-process, to the new corporation, and that, apart from the manufacturing inventory which is not involved herein, such transfer occurred in a single transaction pursuant to the agreement of July 2, 1960.

*Decisions will be entered under Rule 50.*